**David FOSTER et al., Appellant,**

v.

**William H. SPICE, Jr., Appellee.**

No. 14724.

Court of Civil Appeals of Texas.

San Antonio.

April 23, 1969.

Rehearing Denied May 21, 1969.

Kirk Kuykendall, Austin, W. R. Smith, San Antonio, for appellant.

Bond Davis, San Antonio, for appellee.

BARROW, Chief Justice.

This is an appeal by David Foster, his brother and three sisters from a take-nothing judgment entered on an instructed verdict granted appellee, William H. Spice, Jr., at the close of all evidence in appellants' suit to recover damages resulting from appellee's negligence in the performance of his duty as an expert witness to calculate and testify as to the amount of gas royalty owing them by The Atlantic Refining Company under a producing oil and gas lease.

In 1944, the seven Foster children, hereinafter sometimes referred to as lessors, executed an oil and gas lease to Atlantic of 1500 acres located in the Hagist Ranch

Field in Duval County, Texas. The royalty clause of said lease provides: "The conventional royalties to be paid by Lessee are: (a) On oil and gas, including all hydrocarbons, one-eighth (⅛th) of that produced and saved from said land, the same to be delivered to the credit of Lessor into the pipe line and to be *sold at the market price therefor prevailing for the field where produced when run;* [1] * * *." Production of gas was had in the Upper Wilcox formation of said land and in 1950 Atlantic made a 20-year gas sales contract with Texas Illinois Natural Gas Pipeline Company covering the Foster and other leases owned by Atlantic in said Hagist Ranch Field. This sales contract, which became effective in 1952, specifically applies to residue gas only, and provides for graduated payments each five-year period of 7.0180 cents, 8.5531 cents, 9.4394 cents, and not less than 10.0883 cents, respectively, per MCF.

This gas as produced is called "natural or wet gas" and it was sold to the Goliad Gasoline Plant and others who extracted gasoline and other liquid hydro-carbons. The residue gas was thereafter sold to Texas-Illinois under the above sales contract. Atlantic accounted to lessors for one-eighth [2] of the net proceeds received from said gas from all sources. Being dissatisfied in several respects with the way Atlantic was operating the Foster lease, Jesse Foster, one of lessors, who is not a party to this suit, brought suit against Atlantic in the United States District Court for the Southern District of Texas. Subsequently, appellants herein joined as party plaintiffs in that suit, wherein it was asserted that the lease had not been properly developed, and that lessors had not been paid the full royalty to which they were entitled. Appellee herein, a consulting geologist and petroleum engineer, was employed by said plaintiff-lessors as an expert to work up the facts in support of their claims against Atlantic. In this capacity he

made extensive investigation and based on his findings, testified as an expert witness on behalf of lessors in the trial in January, 1963. He testified that the market price of the gas in Hagist Ranch Field was thirteen cents per MCF in 1957, and fourteen cents per MCF in 1958–1962.

Judgment was entered in this cause on April 9, 1963, wherein the trial court found in part: "That the difference between the price of gas actually paid the plaintiffs by The Atlantic Refining Company for gas produced and marketed from the Foster Lease from the Wilcox Sands from January 1, 1957, to July 1, 1962 (which was the period in controversy), and the price of such gas calculated at 13c per MCF for 1957 and 14c per MCF for 1958, 1959, 1960, 1961 and 1962, plus tax reimbursement in each case, *which the court has found to be the market price therefor prevailing for the field where produced when run* during such years is: * * *." (Emphasis ours.) The total of the amounts awarded plaintiffs therein, after applying the four-year statute of limitations to each, was $67,015.00, plus certain overriding royalty interests owned by some of the plaintiffs. These figures, with the exception of the overriding interest, were all based on the calculations of appellee. This part of the judgment was subsequently affirmed on March 26, 1964, by the U. S. Court of Appeals for the Fifth Circuit. See Foster v. Atlantic Refining Co., 329 F.2d 485.

In April, 1964, Miss Doris Foster, one of appellants herein, asked appellee how to calculate the gas royalty so that she could check future run statements. She recalculated appellee's figures which had been used in the Federal Court suit and came up with a substantially higher figure. At her request appellee recalculated his figures and on August 12, 1964, appellee wrote Jesse Foster a letter advising in part: "In reviewing my calculations, I find that I had omitted the gas sales under certain lease numbers shown on the Atlantic's

1. All emphasis herein is ours.

2. We have disregarded a small overriding interest owned by some of appellants.

monthly gas run statements during the period involved and also had not used the correct sales prices for the different periods covered by my calculations." Appellee's recalculations showed that plaintiffs in the Federal Court suit were entitled to recover $120,464.21 in lieu of $67,015.00, the figure testified to in the trial. After plaintiff-lessors reviewed this letter, a motion was filed in the Circuit Court to correct the amount of royalty due them. This motion was supported by an affidavit of appellee that the proper amount owed said parties was $120,464.21. Appellee averred: "I do not know, and have not been able to determine, what brought about the error in my first calculations. It must have been that I overlooked some of the code numbers of the leases or made an error in the calculation of the price differential. At any rate my first calculations were wrong, and I believe the latter figure to be correct."

The Circuit Court overruled such motion, and on January 28, 1965, final judgment was entered based upon the original findings made by the trial court. This suit was filed in Bexar County on April 5, 1965, wherein appellants assert appellee negligently erred in the calculations used in the Federal Court suit by failing to apply the market price of the gas in this field to only the residue gas sold under the Texas-Illinois contract. Appellee had used the total volume of gas produced as set forth in the monthly run statements sent lessors and had given Atlantic credit for all payments made to lessors. This credit included payments made by the Goliad Gasoline plant and by other purchasers of the natural or wet gas. Since the natural gas and the products extracted therefrom, sold for a higher average price than was realized from the residue gas, this resulted in raising the average price paid for all gas produced by about 1.64 cents per MCF over the contract sales price.

Appellants illustrate this contention by an analysis of the severance tax report to the State Comptroller for March, 1961.

The total natural or wet gas produced was 231,540 MCF, which was delivered to the Goliad Gasoline plant, and the products extracted therefrom were sold for $4,095.92. After being processed at this plant the residue gas of 216,500 MCF was sold to Texas-Illinois at the contract price of 8.553 cents per MCF, for a total of $18,517.46. Lessors were paid a one-eighth royalty on $4,095.92 and on $18,517.46. When the amount of natural gas produced is divided into the total value received from all sources an average price of 9.766 cents per MCF is determined. It is appellants' contention that the market price of 13c and 14c should be applied only to the residue gas. Obviously, such .a differential should be based upon only the total amount of residue gas sold under the Texas-Illinois contract, although it is not clear if the 1964 letter and affidavit of appellee were based upon this volume or the volume of natural gas produced as shown on the run statements.

Appellants assert the sole point on this appeal that the trial court erred in sustaining appellee's motion for instructed verdict and entering a take-nothing judgment against them. Appellee urged five grounds for his motion for instructed verdict and for affirmance of said take nothing judgment: 1–2. There is no evidence of negligence which is a proximate cause of injury or damage to appellants, in that the gas price differential was correctly calculated by appellee. 3. A witness is not liable for erroneous testimony given in a legal proceeding in the absence of malice or bad faith. 4. Appellants, through their attorneys, were charged with notice of the basis of the calculations used in the Federal Court and if appellee is negligent, appellants' attorneys were also negligent and their negligence is imputed to appellants. 5. Since appellee testified in January, 1963, and this suit was not filed until April, 1965, appellants' claim is barred by the two-year statute of limitations.

Appellants' complaint that appellee used an erroneous basis for his calculations of

the amount of royalty due them is determined adversely to them by a construction of the judgment of the Federal Court in their suit against Atlantic. The court's finding as to the market price of the gas for the Hagist Ranch Field for the period in controversy was not limited to the market price of dry or residue gas. Therefore, to determine the amount of royalty owed lessors, appellee correctly used the total volume of gas produced and, after applying the market price per MCF to same, deducted all royalty paid lessors for said gas.

Lessors successfully urged in the Federal Court case that the royalties to be paid by lessee were not determined by the amount lessee realized from sale of the gas, but by "the market price prevailing for the field where produced when run." [3] The Court of Appeals said, supra, 329 F.2d p. 489: "The record conclusively establishes that the market price of the gas prevailing in the field when the gas was delivered to the pipeline was 13 cents in 1957 and 14 cents in the 1958–1962 period." Also: "Atlantic urges that the market price is the price at which the gas was sold in 1950. Developing this point it first says that the phrase 'when run' applies to oil but not to gas on the theory that a 'run' is a transfer of crude oil from stock tanks to a pipeline. We see no reason why the phrase may not apply to gas and mean the time of delivery of gas from the well to the pipeline."

Appellants urge that "delivery of gas from the well to the pipeline" has reference to the delivery of residue gas to a transmission company and that the market price established was for such residue gas. The uncontradicted testimony of appellee is to the contrary. He testified that his opinion of the market price of gas for this field was based on the market price of all gas run from the well into the pipeline. He specifically denied, without contradiction, that his testimony in the Federal Court as to the prevailing market price was based on the price of residue gas only.

Thus we are faced with the unique situation where appellee wrote a letter and made an affidavit stating that he had made an error in his calculations in the Federal Court, yet such statement and affidavit have been conclusively shown in this trial to be incorrect. Assuming that such statement and affidavit would raise a fact question that appellee had made an error, the subsequent falsity of such opinion compels the result that such an error was not the proximate cause of any injury or damage to appellants. The trial court therefore correctly granted appellee's motion for instructed verdict and entered a take-nothing judgment. In view of this conclusion, it is unnecessary to discuss appellee's other grounds for such motion and judgment.

The judgment is affirmed.

3. See also Texas Oil & Gas Corp. v. Vela, 429 S.W.2d 866 (Tex.Sup.1968).